OPINION
GREER, Judge.
The issue in this case is whether the Unemployment Insurance Appeals Board *234 of the Arizona Department of Economic Security erroneously characterized appellant’s noon-hour monitoring of the school parking lot as part of appellant’s “employment,” so that appellant’s refusal to monitor the lot was misconduct under A.R.S. § 23-775 and disqualified him from receiving unemployment benefits. We hold that the record supports the finding of the appeals board, and therefore affirm.
Appellant Young was hired as a purchasing agent for the Sahuarita Unified School District. A purchasing agent generally purchases supplies, materials and equipment for the school district, and operates the central warehousing and distribution system. In addition to these duties, for five months prior to appellant’s termination, appellant had patrolled the high school parking lot during the students’ lunch hour to insure that non-students on campus registered with the principal’s office. Appellant assumed the patrolling duties as the result of a school board meeting held on September 2, 1981. At the meeting, the board discussed the need for the patrol, and the possibility of hiring someone to perform the job. Appellant, who attended the meeting, offered to patrol the parking lot if, in exchange, the board would hire an assistant to help appellant in the warehouse. The board never expressly accepted or rejected appellant’s offer at the meeting, however, the board approved the hiring of appellant’s assistant. On September 18, 1981, appellant’s immediate supervisor, the Assistant Superintendent of Business Affairs, sent a memo to appellant advising him to start patrolling the parking lot the following Monday. Appellant began patrolling the lot on September 21, 1981, and continued to do so for five months.
On February 12, 1982, appellant was patrolling the parking lot when a young man drove up in a pick-up and parked. Appellant approached the boy, asked his name, and advised him to sign in at the principal’s office. The boy gave appellant a name and proceeded in the direction of the principal’s office. As appellant patrolled the lot, he noticed a partially concealed handgun on the passenger side floor of the locked pickup. The boy returned to the lot as the assistant principal arrived. At that time, appellant learned that the boy, a recent graduate of the school, had given him a false name. The boy was advised to leave and not return during school hours, and he left.
After this incident, appellant informed the school superintendent that he would not patrol the parking lot anymore. Twice the superintendent asked appellant to patrol the parking lot during the lunch hour, and twice appellant refused. The superintendent then discharged appellant.
Appellant applied for unemployment benefits. A deputy determined that appellant was disqualified for benefits because appellant’s “refusal to perform his duties as part-time security guard reflected a willful disregard of the employer’s interest.” Appellant appealed to an appeal tribunal of the Department of Economic Security. After an evidentiary hearing, the appeal tribunal affirmed the deputy’s determination, finding that the superintendent’s order to continue patrolling the lot was reasonable under the circumstances; that the appellant refused to perform duties properly assigned to him; and that appellant was discharged for insubordination, which amounted to misconduct connected with his work. On appeal for review, the Unemployment Insurance Appeals Board found no material error in the appeal tribunal’s finding of fact, and affirmed. Appellant filed a timely notice of appeal to this court pursuant to A.R.S. § 41-1993.
Appellant argues on appeal that he volunteered to patrol the parking lot out of the goodness of his heart, to save the school some money, and as an activity outside of the scope of his regular job as a purchasing agent. He contends that the school could not discharge him for refusing to patrol the parking lot because he was hired as a purchasing agent, and to force him to patrol the lot would materially change his duties.
This court does not sit as a trier of fact in the review of administrative de *235 terminations, and will affirm the decision of the administrative agency unless it is arbitrary, capricious, or an abuse of discretion. Eshelman v. Blubaum, 114 Ariz. 376, 560 P.2d 1283 (App.1977). Thus, our review is limited to determining whether the record supports the appeals board’s findings.
Under A.R.S. § 23-775, an individual shall be disqualified from obtaining unemployment benefits “for misconduct connected with the employment____” The critical questions for us to resolve are: 1) whether the refusal to patrol was connected with appellant’s work, and 2) if so, whether appellant’s refusal was misconduct within A.R.S. § 23-775(2).
We find basis in the record to support the Department’s finding that patrolling the parking lot was part of appellant’s employment. The memo which appellant received instructing him to begin his patrolling duties refers to appellant’s “starting your new assignment.” The memo also requests appellant to arrange a meeting “to define your duties and responsibilities.” Appellant testified that he became aware that the job was assigned to him when he received the memo. The superintendent testified that after appellant volunteered for the patrol, he assigned appellant the job because the school board voiced a need for the patrol and appellant was the type of person who could handle the job. Importantly, the evidence revealed that appellant took his lunch hour either before or after his patrol, and although he was not paid a specific sum of money for his patrolling duties, he was not required to work overtime to make up for the time he was on patrol. This is evidence that appellant’s patrolling duties were part of his employment.
The fact that the school did not pay appellant previously allocated patrol money is not dispositive. • Additionally, that he originally volunteered is immaterial. A.R.S. § 23-615 defines employment as “any service of whatever nature performed by an employee for the person employing him ....”
Appellant contends that “parking lot patrol” is not a duty listed on the job description he was given upon being hired, and therefore is not part of his employment. We find this argument unpersuasive. The job description included “other duties as required by the Assistant Superintendent for Business Affairs” as part of appellant’s job. Additionally, even if the patrolling job was not within the scope of appellant’s job description, it became part of his job when he continued to work under the changed conditions. The Indiana Court of Appeals addressed this issue in Jones v. Review Board of the Indiana Employment Security Division, 399 N.E.2d 844 (3d Dist.1980). Jones was hired as a cook to work from 9:00 a.m. to 3:00 p.m. When her employer told her she would have to work until 6:00 p.m., Jones protested at first, but then agreed to accept the change of hours. The court stated:
... if the employee chooses to remain in the employment under the changed conditions, the prior agreed upon condition will be deemed to have been abandoned and will no longer be considered part of the working conditions.
399 N.E.2d 844, 845.
In this case appellant accepted his new' duties by performing them, for five months, without protestation. This precludes his contention that the parking lot patrol was not part of his employment, and his contention that requiring him to patrol would materially change his duties.
The record also supports a finding of misconduct. A.C.R.R. R6-3-5145(A)(1) provides:
In order for an act by a worker to be considered misconduct, it must be established that the results of the act had, or could have had, an adverse affect (sic) on the employer’s interests.
When the misconduct is insubordination, an adverse effect can be presumed where an employee refuses to comply with a reasonable order, because the refusal undermines the employer’s authority and, thus, interferes with the functioning of the business. *236 See Arizona Department of Economic Security v. Valdez, 119 Ariz. 570, 582 P.2d 660 (App.1978). A.C.R.R. R6-3-51255 gives as examples of insubordination the refusal to follow reasonable and proper instructions and the refusal to accept assignment to suitable work. Appellant does not deny that he refused to comply with the superintendant’s order. In fact, testimony revealed that appellant flatly refused, adding, “and what are you going to do about it,” without even attempting, through suggestions or concessions, to accommodate his employer’s interest in maintaining a daily monitor in the parking lot. Appellant argues instead that the order was not reasonable and proper.
We cannot say that the Department erred in finding that the order to patrol the lot was reasonable. The record shows that appellant accepted and performed the patrolling duties for five months, on “company time.” Presumably, the assignment was reasonable all during those five months. Appellant claims that the order to return to the lot was unreasonable because he was faced with a life-threatening situation. However, evidence reveals that appellant was never threatened, intimidated or harmed in that incident, he was not afraid of the boy, the handgun was in a locked truck, and the boy left when told to do so. Appellant knew the purpose of the patrol and should have expected to encounter non-students coming onto campus when he accepted the patrolling duties. The record supports finding the order reasonable.
For these reasons, the determination of the appeals board is affirmed.
MEYERSON, P.J., and FROEB, J., concur.