Hattie M. TRIGG, (Claimant Below), Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and Fort Wayne Community Schools, (Employer Below), Appellees.

No. 2–782A209.

Court of Appeals of Indiana, Third District.

Feb. 23, 1983.

W. Paul Helmke, Jr., Helmke, Beams, Boyer & Wagner, Fort Wayne, for appellant.

James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, for appellee Fort Wayne Community Schools.

STATON, Judge.

The Ft. Wayne Community School System (School) fired Hattie Trigg. Later, Hattie Trigg applied for unemployment benefits. After a hearing, the School appealed the referee's grant to Trigg of unemployment benefits. The Review Board (Board) reversed the decision of the appeals referee and found that Trigg was discharged for a knowing violation of a School work rule prohibiting excessive tardiness.[1]

---

1. The School's work rule reads in pertinent part:

"The Board of School Trustees and Superintendent of Fort Wayne Community Schools establish policies, rules and regulations governing employee conduct and activities. In addition, each unit head/principal, within his or her school, may establish rules and regulations not inconsistent with those established by the Board and the Superintendent.

"The following is a list of actions which may lead to disciplinary action, including suspension with or without pay or termination of employment, for those employees found to have committed them; the list is not intended to include all types of activity which will lead to discipline, but is intended to be suggestive of those types of things which will result in disciplinary action being taken:

&ast; &ast; &ast; &ast; &ast; &ast;

Therefore, the Board concluded that Trigg was not entitled to unemployment benefits. On appeal, she raises the following issues:

(1) Does IC 22–4–15–1(e)(2) (Burns Code Ed.Supp.1982) require the Board to find uniform enforcement of a violated work rule before it can conclude that Trigg was discharged for just cause?

(2) Did the Board prejudice Trigg's due process rights by its failure to directly notify her attorney that briefs could be filed even though Trigg had notice and her attorney did not seek to file a brief?

(3) Is the Board's decision contrary to law?[2]

Reversed and remanded for a finding of whether the violated work rule prohibiting excessive tardiness was uniformly enforced.

This Court is bound by the Board's factual determinations. *City of Indianapolis v. Review Board of the Indiana Employment Security Division* (1982), Ind.App., 441 N.E.2d 36, 37. We will neither weigh the evidence nor judge the credibility of the witnesses. *Skirvin v. Review Board of the Indiana Employment Security Division* (1976), 171 Ind.App. 139, 355 N.E.2d 425, 428. We will disturb the decision only if reasonable men would reach a different result. *Molina v. Review Board of the Indiana Employment Security Division* (1981), Ind.App., 418 N.E.2d 1198, 1200. This Court may only consider the evidence, together with its reasonable inferences, most favorable to the Board's decision. *City of Indianapolis, supra* at 37.

The facts most favorable to the Board's decision are as follows: From September, 1979 until February 11, 1980, Trigg worked for the School as a teachers aide to Janet Perez. In September, 1979, Perez and Trigg agreed that Trigg's work hours would be from 7:30 a.m. to 4:30 p.m. Despite an unsatisfactory evaluation, Trigg arrived after 7:30 a.m. sixteen times within a three month period. After a second unsatisfactory evaluation, the School discharged Trigg for violating the School's work rule prohibiting excessive tardiness. The Board made the following findings and conclusions:

"The Review Board finds that claimant was employed until February 11, 1980, and was discharged for violation of employer work rules Nos. 12 and 17, 'Insubordination' and 'Excessive tardiness or absenteeism.'

"It further finds that the evidence indicates that claimant had knowledge of employer work rules in question as indicated by the evidence.

"It further finds that the evidence submitted by employer fails to allow this Board to make a finding of ultimate fact that claimant was insubordinate thus violating employer work rule No. 12.

"It further finds that due to the testimony of claimant relative to her reporting back from her lunch break late we cannot make a finding of ultimate fact that claimant reported back from her lunch break late as often as her supervisor alleges in that on occasion, the claimant's supervisor reported back to work after claimant.

"It further finds that claimant's tardiness in the morning was the result of bad weather conditions and traffic jams which was documented by her supervisor who had first hand knowledge of claimant's attendance.

"It further finds that although claimant alleges that she, on occasion, arrived at work prior to her starting time of 7:30 a.m., she failed to dispute the testimony of her supervisor that she would not make an entry on claimant's attendance record in the morning when she arrived

"17. Excessive tardiness or absenteeism."

**2.** This issue raises two questions: a) whether the evidence is sufficient to sustain the findings of fact and b) whether the findings of fact are sufficient to sustain the Board's decision. *Graham v. Review Board of the Indiana Employ-* *ment Security Division* (1979), Ind.App., 386 N.E.2d 699, 701. We need not fully discuss these questions since the Board failed to find that the violated work rule was uniformly enforced.

at work after claimant thus indicating that the only documented evidence of claimant's tardiness was when claimant's supervisor was present on claimant's arrival and had first hand knowledge.

"The Review Board concludes that the evidence of probative value submitted by employer is lacking in content to support their allegation that claimant was insubordinate thus violating employer work rule No. 12 or that claimant was in violation of employer work rule No. 17 excessively returning tardy from her lunch break.

"It further concludes that evidence of probative value was submitted by employer to support the allegation that claimant was excessively tardy in the morning in which claimant has failed to show good cause for being tardy within the meaning of Chapter 15–1 of the Act, in that claimant's stated reasons for her tardies in the morning were due to situations (bad weather, traffic jams) that could have been remedied by her starting to work earlier in order to eliminate her tardiness problem, therefore, claimant was discharged for knowingly violating employer work rule No. 17."

## I.

### Uniform Enforcement

Trigg contends that the Board's findings are insufficient to support its conclusion that she was discharged for just cause.

■ Pursuant to IC 22–4–15–1, a claimant is ineligible for unemployment benefits if he is discharged for just cause. *Barnett v. Review Board of the Indiana Employment Security Division* (1981), Ind.App., 419 N.E.2d 249, 251. Discharge for just cause includes but is not limited to the following definitions:

"(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

"(2) knowing violation of a reasonable and uniformly enforced rule of an employer;

"(3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

"(4) damaging the employer's property through wilful negligence;

"(5) refusing to obey instructions;

"(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

"(7) conduct endangering safety of self or coworkers; or

"(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owned an employer by an employee."

IC 22–4–15–1 (Burns Code Ed.Supp.1982). The Board has wide latitude to determine issues and hear theories not heard by the appeals referee. *Ervin v. Review Board of the Indiana Employment Security Division* (1977), 173 Ind.App. 592, 364 N.E.2d 1189, 1191–1192. This wide latitude allows the Board to use any applicable definition within chapter 15, section 1(e) to find that a claimant was discharged for just cause. *See Barnett, supra.* Our review is limited to whether the Board made sufficient findings to support the definition it chose to apply. *Id.* at 251; *Wolfe v. Review Board of the Indiana Employment Security Division* (1978), Ind.App., 375 N.E.2d 652, 655–656.

■ Trigg alleges that the Board applied the definition in IC 22–4–15–1(e)(2) to conclude that she was discharged for just cause: "[a] knowing violation of a reasonable and uniformly enforced rule of an employer; ..." IC 22–4–15–1(e)(2) (Burns Code Ed.Supp.1982). She further alleges that according to *Barnett,* a conclusion that a claimant was discharged for just cause pursuant to this section requires an initial finding that the violated work rule was uniformly enforced. *Id.* at 251. On the other hand, the School alleges that the Board's failure to find uniform enforcement

is harmless error because section 1(e)(3) provides a definition applicable to Trigg's discharge: "Unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness; ..." IC 22–4–15– 1(e)(3) (Burns Code Ed.Supp.1982). Even if the Board could have applied section 1(e)(3), we agree with Trigg that it did not.[3] Instead, the Board concluded that Trigg was "discharged for knowingly violating employer work rule No. 17."

In *Barnett, supra,* an employee was fired for violating a known, posted work rule which prohibited dangerous weapons in the factory. *Id.* at 251. The Board concluded that the employee "was discharged by the employer later in the day of April 24, 1980, for violation of the posted company rule." *Id.* at 250. The language of this conclusion is similar to the definition which is now designated as 1(e)(2). In *Barnett,* the Court limited its review to whether the Board's findings were sufficient to support the employee's discharge for just cause pursuant to that definition. It did not search the facts to determine whether another definition was applicable to affirm the Board's conclusion. Such a search would invade the province of the Board. *Id.* at 251; *Wolfe, supra* at 655. Therefore, we decline the School's invitation to speculate whether the Board could have applied another definition to reach the same conclusion.

The Board's conclusion that Trigg was discharged for knowingly violating a School work rule is contrary to law because it failed to find that the violated work rule was uniformly enforced. In *Barnett,* this Court held that a specific finding of whether the violated work rule was uniformly enforced was necessary to resolve the material issue of whether the employee was discharged for just cause. *Id.* Therefore, the Board's failure to make a specific finding that the rule prohibiting excessive tardiness was uniformly enforced requires reversal

and remand of this case for such a finding. *Id.*

## II.

### Due Process

The Board directly notified the School's attorney and Trigg that it would accept briefs in lieu of oral arguments; it did not notify Trigg's attorney. Trigg contends that although she received notice that she could file a brief, the Board prejudiced her due process rights because it did not directly notify her attorney.

 The due process clause does not require a perfect system for the administration of justice. *Osborn v. Review Board of the Indiana Employment Security Division* (1978), 178 Ind.App. 22, 381 N.E.2d 495, 500. To prove that the Board committed reversible error, Trigg must show that she was prejudiced by the Board's failure to notify her attorney that he could file a brief. *White v. Review Board of the Indiana Employment Security Division* (1972), 151 Ind. App. 426, 280 N.E.2d 64, 66. Trigg has shown no prejudice. Although her attorney had actual notice that he could file a brief, he made no attempt to do so by asking for an extension of time. She admits that neither party filed a brief and she cites no authority to support her allegation that due process requires the same notice for all parties. Hence, her allegation is without merit.

Reversed and remanded for a finding of whether the violated work rule prohibiting excessive tardiness was uniformly enforced.

HOFFMAN, P.J., concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

It may appear at first blush that the majority opinion has merely taken the view that where the review board has premised

---

**3.** In its brief, the School supported its allegation by citing only part of the Board's conclusions. When read in its entirety, the Board noted that the School submitted evidence to support its claim that Trigg was excessively tardy. However, the Board made no findings that Trigg was excessively tardy.

its decision upon one of the grounds of discharge for good cause enumerated in IC 22–4–15–1, we may not look to a different statutory ground even though the review board's findings clearly establish its applicability. If that were the case I would feel constrained to dissent. It is not.

As the majority points out, the review board concluded Trigg was discharged for knowing violation of a work rule. However, the findings were inadequate since they do not cover the element of uniform enforcement.

For essentially the same reasons we cannot affirm on the theory that the findings demonstrate a clear violation of the proscription against "unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness." IC 22–4–15–1(e)(3).

We have said generally that chronic absence without notice and without permission amount to misconduct under this section. *Thompson v. Hygrade Food Products Corp.* (1965), 137 Ind.App. 591, 210 N.E.2d 388. The review board's findings are not adequate to enable us to say that definition was met. Indeed the question of uniform enforcement has bearing under paragraph (3). The board could determine that a discharge was not for "unsatisfactory" attendance if no other employees were disciplined although many had worse attendance records than the claimant and otherwise had the same responsibilities.

I therefore concur.