**MEAD JOHNSON AND COMPANY,**
Appellant,

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and John A. Oppenheimer,** Appellees.

**No. 2–1183A432.**

Court of Appeals of Indiana,
Third District.

May 24, 1984.

Thomas O. Magan, Robert H. Brown, Kahn, Dees, Donovan & Kahn, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee Review Bd.

David L. Jones, Niels Eric Hansen, Bowers, Harrison, Kent & Miller, Evansville, for appellee John A. Oppenheimer.

STATON, Presiding Judge.

The Mead Johnson Company fired John Oppenheimer, and he applied for unemployment benefits. His application was denied, but an Appeal Referee reversed the denial of his application. Later, the Appeal Referee's decision was adopted by the full Review Board. The decision of the Appeal Referee concluded that the Mead Johnson Company had waived its right to fire John Oppenheimer, since it had chosen and imposed the disciplinary sanction for Oppenheimer's violation of company policy. This first sanction chosen and imposed by Mead Johnson was understood by those directly involved to be in complete settlement of the matter. Therefore, a second sanction, the firing of Oppenheimer, imposed a month later for the same violation did not constitute just cause. The Mead Johnson Company appeals. We affirm.

Affirmed.

■ This Court is bound by the Board's factual determinations. *Trigg v. Review Board of the Indiana Employment Security Division* (1983), Ind.App., 445 N.E.2d 1010, 1012. We will neither weigh the evidence nor judge the credibility of the witnesses. *Id.* We will disturb the decision only if reasonable men would reach a different result. *Id.* This Court may consider only the evidence, together with its reasonable inferences, most favorable to the Board's decision. *Id.*

■ The facts show that on November 17, 1981, Oppenheimer witnessed a fellow employee, Rich Moorman, verbally abuse and berate female employees. Moorman boasted that he did so much work that he would wear out his work gloves long before any female employee could wear her gloves out. Tired of hearing Moorman boast and berate others, Oppenheimer cut the thumb tops of Moorman's work gloves as a practical joke so it would appear that Moorman had worn out his work gloves.

The next morning, Oppenheimer confessed the cutting of Moorman's gloves to his floor supervisor and apologized. The supervisor reported the incident to management, Cheryl Kuchna and Dan Koch. They notified David Long, the personnel director whose responsibilities included a search for disciplinary precedent in similar cases. Finding no precedent and without consulting others who would know of any precedent, Long advised Kuchna and Koch that a one day suspension would settle the matter. Once Oppenheimer had complied with the suspension penalty, Kuchna and Koch reassured him that the matter was settled.

Approximately one month later, Oppenheimer was terminated. Koch and Kuchna told him that prior employees had been terminated for destroying property; Mead Johnson could avoid liability for dissimilar treatment of employees only if Oppenheimer was terminated for cutting Moorman's work gloves.

The Board made the following findings and conclusions:

"FINDINGS AND CONCLUSIONS: The Review Board finds that claimant was employed until December 23, 1981, and was discharged for destroying company property.

It further finds that the incident which was alleged to have subsequently lead [*sic*] to claimant's separation occurred in November, 1981.

It further finds that claimant had been disciplined for this occurrance [*sic*] by serving a one day suspension, pending no further disciplinary action.

It further finds that claimant did make incisions in a co-worker's glove as a practical joke and was disciplined at that time by mutual agreement of the management.

The Review Board concludes that claimant's actions of making incisions in a co-worker's glove was only a practical joke and cannot be considered a deliberate act designed to injure the employer. It further concludes that claimant had been disciplined by mutual agreement of the management and employer's action of disciplining claimant twice for the same act was unfair and most certainly unreasonable enforcement of employer work rules, therefore, we must conclude

that claimant was discharged from his employment, but not for proven just cause in connection with work within the meaning and intent of Chapter 15–1 of the Act."

These findings are supported by the facts as set forth above. *Graham v. Review Board of the Indiana Employment Security Division* (1979), 179 Ind.App. 497, 499, 386 N.E.2d 699, 701. The findings that Oppenheimer did not intend to injure Mead Johnson and that he had complied with Mead Johnson's disciplinary measure are sufficient to support the Board's conclusion that Oppenheimer was not discharged for just cause. *Id.*

Mead Johnson waived its rights to fire Oppenheimer when Oppenheimer complied with Mead Johnson's disciplinary sanction and was reassured that the matter was settled.

 Whether an employer waives an established disciplinary sanction for certain conduct by an employee depends on the factual posture of each case. For example, in *Poort v. Review Board of the Indiana Employment Security Division* (1981), Ind.App., 418 N.E.2d 1193, at 1197, this Court concluded that the factual posture did not constitute a waiver.

"Poort finally contends in the event that her conduct did constitute a refusal to obey instructions under the statute, the fact that the employer's representatives did not discharge her until the end of the day effected a waiver of their right to do so.

The plant superintendent testified that he was not apprised of the problem with Poort until after noon. Thereupon he, and two other supervisors, met with Poort and spent the remainder of the afternoon listening to her complaints. They tried to convince her that they were treating her fairly. Finally, after getting nowhere, Employer discharged Poort. We hold that no waiver existed under these facts."

*Poort v. Review Board of the Indiana Employment Security Division* (1981), Ind.App., 418 N.E.2d 1193, 1197.

Unlike the facts in *Poort*, the facts in this case require an outright adoption of the waiver theory. Mead Johnson management determined what it considered the appropriate sanction for the practical joke of cutting work gloves. Oppenheimer complied with the imposed sanction and was reassured that the matter was settled. Approximately one month later the matter resurfaced and Oppenheimer was fired.

We agree with the Board that under the circumstances of this case it would be unreasonable to allow Mead Johnson the option of later invoking a more severe sanction.

Affirmed.

GARRARD and HOFFMAN, JJ., concur.